**SO ORDERED.**
**SIGNED this 2nd day of March, 2018**

*/s/ Shelley D. Rucker*
**Shelley D. Rucker**
**UNITED STATES BANKRUPTCY JUDGE**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

In re:

Jamie Denise McGinness                              No. 4:17-bk-14746-SDR
    Debtor;                                          Chapter 13

## MEMORANDUM OPINION

The court has before it an objection to confirmation of the debtor's chapter 13 plan filed by Nissan Motor Acceptance Corporation ("Nissan"). [Doc. No. 23]. The plan provides for the payment of an installment loan on a vehicle that the debtor purchased within 910 days of filing her petition for bankruptcy under chapter 13. The issue before the court is whether the hanging paragraph found in 11 U.S.C. § 1325(a) is applicable to this loan. Specifically, the court must determine whether the vehicle was "acquired for the personal use of the debtor" such that the provisions of 11 U.S.C. § 506 may not be used to reduce the amount of the secured claim owed to the objecting creditor. *See* 11 U.S.C. § 1325(a) (hanging paragraph).

The court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(L). These are the court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052, made applicable to contested matters by Fed. R. Bankr. P. 9014.

1. **Facts**

The parties have stipulated to the following facts.

The debtor purchased a 2016 Nissan Altima on July 2, 2016. The purchase price was financed by Nissan, and the debt was secured by a lien on the vehicle. [Claim No. 1, at 2]. The debtor filed a chapter 13 petition with this court on October 18, 2017. [Doc. No. 1]. The parties agree that the vehicle was purchased within 910 days of the date of filing. On October 23, 2017, Nissan filed a claim in the amount of $27,867.56. [Claim No. 1, at 2]. The debtor's plan provides for Nissan to be paid a value of $15,000 with interest of 4% and a monthly payment of $277. [Doc. No. 2, at 1]. Nissan filed an objection to confirmation of the debtor's plan on December 12, 2017, based on the "910-day" provision found in 11 U.S.C. § 1325(a)(5) in the hanging paragraph. [Doc. No. 23].

The retail installment sale contract, which is attached as an exhibit to the claim filed by Nissan, provides that the "primary use for which" the vehicle was purchased was "[p]ersonal, family, or household unless otherwise indicated below." [Claim No. 1, at 6]. There is no other use indicated on the face of the contract. The debtor testified during her Rule 2004 examination that no one at the dealership reviewed that provision of the contract or otherwise asked her about the purpose of the vehicle or whether it was being purchased for personal or commercial use.

Schedule I indicates that the debtor is a healthcare provider employed by a non-profit corporation identified as Pauline and Thomas Healthcare, Inc., in Murfreesboro, Tennessee. [Doc. No. 1, at 34]. The debtor testified that she is a "healthcare provider" but is not a nurse,

2

LPN, or RN. She testified that among her duties she is required to pick up patients under the care of her employer and take them to various events and medical appointments. She testified that she does this a minimum of three and a half hours to a maximum of six hours per day. She typically works five days a week but sometimes works as much as seven days per week. She stated that she uses the vehicle in question for the purpose of meeting her job requirements. She explained that it is a condition of her employment that she has a vehicle available to transport patients during her entire workday.

The debtor testified that she does not have a commercial insurance policy on the vehicle because her employer does not require it. She stated that she does have a commercial driver's license but that it is not required for her employment. She explained that she needed a commercial driver's license for a prior job and maintained it as a personal choice. The debtor receives reimbursement for all mileage on the vehicle during her employment based on the rates approved by the State of Tennessee. She testified that she also uses the vehicle for all of her personal uses, including grocery shopping, personal shopping, and visiting friends and family. She testified that she rarely, if ever, uses the vehicle to take a vacation because she cannot afford to do so.

   **2. Legal Analysis**

Section 1325(a)(5)(B) of the Bankruptcy Code provides that, for a chapter 13 plan to be confirmed, it must provide for the payment in full of each allowed secured claim, with interest. A plan may generally specify the value of the collateral, and the creditor will have a secured claim to that extent and an unsecured claim to the extent that the debt exceeds the collateral value. *See* 11 U.S.C. § 506(a)(1). However, there is an exception that appears at the end of section 1325(a).

The language that has come to be known as the "hanging paragraph" provides, in part, that section 506 shall not apply if:

> the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor….

11 U.S.C. § 1325(a) (hanging paragraph). Given its broadest interpretation, the hanging paragraph prevents the cramdown of a claim incurred within 910 days of the filing of a bankruptcy petition when the claim is secured by a vehicle that the debtor bought for his or her personal use.

The only one of these requirements that is contested in this case is whether the vehicle was "acquired for the personal use of the debtor" within the meaning of the hanging paragraph. The debtor contends that because she uses the vehicle to perform her job, her use of the vehicle is not "personal use" and, therefore, the hanging paragraph does not apply. The creditor contends that the hanging paragraph applies because the debtor's use of the vehicle includes "personal use."

Defining what constitutes "personal use" under section 1325(a) has created quite a bit of litigation. *See In re Counts*, No. 07-60542-13, 2007 WL 2669204, at *2 (Bankr. D. Mont. Sept. 6, 2007) ("The eight words contained in the phrase 'acquired for the personal use of the debtor' . . . have sparked an amazingly large amount of litigation. . . ."). The term "personal use" is not defined in the Bankruptcy Code. *In re Lorenz*, 368 B.R. 476, 485 (Bankr. E.D. Va. 2007) (citations omitted). A consensus of courts have construed "personal use" to mean a "non-business use." *In re Joseph*, No. 06-50655, 2007 WL 950267, at *2 (Bankr. W.D. La. March 20, 2007) (emphasis in original omitted); *see also In re Grimme*, 371 B.R. 814, 816 (Bankr. S.D.

Ohio 2007). It is uniformly accepted that the debtor's intended use at the time the vehicle was purchased is the operative intent when determining whether the "hanging paragraph" applies to a particular secured claim. *In re LaDeaux*, 373 B.R. 48, 51 (Bankr. S.D. Ohio 2007) (citations omitted). It is also widely accepted that the debtor's actual use of the vehicle following the purchase can be persuasive evidence of the debtor's intent at the time of purchase. *Id.*; *see also In re Solis*, 356 B.R. 398, 408-09 (Bankr. S.D. Texas 2006).

Courts have struggled, however, to develop a consistent and coherent test for determining whether a debtor's use of a vehicle constitutes "personal use." Courts frequently state that they will consider the "totality of circumstances" in determining what constitutes personal use. *See, e.g., In re Joseph*, 2007 WL 950267, at *4; *In re Solis*, 356 B.R. at 408; *In re Hill*, 352 B.R. 69, 72 (Bankr. W.D. La. 2006). However, this approach has been somewhat unevenly applied, and this court ascertains at least three variations of the "totality of circumstances" approach that have emerged. *See In re Ozenkoski*, 417 B.R. 794, 798-99 (Bankr. E.D. Mo. 2009); *see also In re Counts*, 2007 WL 2669204, at *9-10.

At one end of the spectrum are cases that examine the "totality of circumstances" by considering whether the debtor's acquisition of a vehicle "enabled the debtor to make a significant contribution" to the debtor's gross income. *See, e.g., In re Johnson*, 350 B.R. 712, 716 (Bankr. W.D. La. 2006) *rev'd*, 2007 WL 2702193 (W.D. La. Sept. 11, 2007); *In re Hill*, 352 B.R. at 73; *In re Martinez*, 363 B.R. 525, 527 (Bankr. S.D. Tex. 2007). If the circumstances show that it did, then the court will find that the vehicle was not acquired for the personal use of the debtor. *In re Hill*, 352 B.R. at 73.

An illustrative case is *In re Hill*, in which the debtors owned one vehicle, which Mrs. Hill used to commute to and from work but which was not required to be used during the course of

5

her workday. *Id.* The debtors also used the vehicle for personal use as it was their only vehicle. *Id.* The *In re Hill* court rejected the argument that "*any* personal use of the vehicle by a debtor triggers the anti-cramdown provision of the hanging paragraph." *Id.* (emphasis in original). The court, relying on its prior ruling in *In re Johnson*, ostensibly applied a "totality of circumstances" approach, but explained that the appropriate test was "whether the acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit." *Id.* (quoting *In re Johnson*, 350 B.R. at 716). After noting that the debtors' use of the vehicle was "mixed, both personal and business," the court found that the debtors' use of the vehicle to "generat[e] income for their maintenance and support" was a business use rather than a personal use. *Id.* at 74. Accordingly, the *In re Hill* court found that the hanging paragraph of section 1325(a) was not applicable, and the debtors were able to birfurcate the secured claim. The *In re Hill* test has been described as a "liberal" one because it implies that the "level of personal use is irrelevant where the debtor uses the car to get to and from work, thus permitting the debtor to generate income for maintenance and support." *In re Counts*, 2007 WL 2669204, at *9.

A second approach flips the analysis around and examines whether there is personal use that is "significant and material, regardless of whether there is also some business use." *In re Solis*, 356 B.R. at 409; *see also In re Lorenz*, 368 B.R. at 485; *In re Wilson*, No. 06-40637, 2006 WL 3512921, at *3-4 (Bankr. D. Kan. Dec. 5, 2006). In *In re Solis*, the debtor and her nondebtor spouse acquired a truck within 910 days of the debtor's petition date that was their sole means of transportation. *In re Solis*, 356 B.R. at 402. The debtor used the vehicle to drive to and from work, and her nondebtor spouse used the truck to pull a trailer for his disc jockey business, a business which was started after the truck was purchased. *Id.* at 402-03. The court concluded that the truck had not been purchased for a business purpose. *Id.* at 403, 411. In so doing, the *In re*

6

*Solis* court criticized the *In re Hill* decision for looking first to whether the debtor's use of a vehicle enabled the debtor to make a significant contribution to the debtor's gross income. *Id.* at 408. The *In re Solis* court found that rather than developing standards for what *does not* constitute personal use, as the *In re Hill* court had done, the appropriate focus should be on defining what *does* constitute personal use. *Id.* at 408, 410.

The court explained that a personal use is one that "benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations." *Id.* at 410. The court noted that it was proper to consider the "totality of the circumstances," but also articulated the test that a vehicle is used for personal use if it is used to satisfy "significant and material" personal needs *even if* it is also used for business purposes. *Id.* at 409.

A third approach to the "totality of circumstances" test was put forward by the court in *In re Joseph*, 2007 WL 950267, at *4. In that case, the debtor testified that she acquired the vehicle primarily as transportation to and from work and that she did not use the vehicle once she arrived at work. *Id.* She also testified that she used the vehicle for personal purposes such as running errands. *Id.* at *1. The court recognized that many vehicles are used to satisfy a combination of both business and personal needs. *Id.* at *4. The court contrasted a vehicle that is used for commuting purposes with a vehicle that is used to actually perform the functions of a job:

> Transportation to and from work is a personal use in the sense that it satisfies the debtor's personal needs and obligations—namely, the need for a reliable means for the debtor to commute to his or her place of employment. The court recognizes that work transportation has a monetary value in the sense that it allows the debtor to maintain a job (especially where there is no reliable public

7

> transportation), and that the income from the debtor's job may provide monetary benefits to the debtor and the debtor's family. However, these benefits are still personal to the debtor and the debtor's family. Any other reading would essentially eradicate the distinction between personal and business use.
>
> In order to establish that a vehicle is used for a "business" or "profit-making" purpose, a debtor must show that the vehicle is used to perform the functions of a business or a trade. In other words, does the debtor use the vehicle to carry out his or her job duties once the debtor arrives at work?

*Id.* at *3 (internal footnote omitted).

The *In re Joseph* court held that the appropriate test is whether the vehicle is predominantly used to perform functions of a business or trade rather than personal ones. *Id.* at *4. The court explained that "[i]f the evidence shows that the business use of the vehicle predominates—even if the debtor uses the vehicle for personal purposes to a lesser extent—then the hanging paragraph does not apply." *Id.* The court outlined relevant factors, including:

> the nature of the debtor's work, how the debtor's vehicle is used to perform the debtor's job duties, whether or not the debtor's employer requires the debtor to use his or her vehicle to perform the debtor's job-related duties, whether the debtor's employer reimburses the debtor for mileage, and whether or not the debtor claims any vehicle-related expenses as business expenses on the debtor's tax returns.

*Id.* at 3. The court noted that it would also consider as a factor the contents of a retail installment contract executed by the debtor in which the debtor indicated whether he or she was acquiring the vehicle for personal or business use. *Id.* If the debtor had indicated at the time of purchase that the vehicle would be used for personal use, this fact alone would not be dispositive but would "weigh heavily in favor of a finding that the vehicle was acquired for personal use." *Id.* Based on these factors, the *In re Joseph* court ultimately decided that the debtor acquired the vehicle for personal use and that the hanging paragraph applied.

After careful consideration of the various tests and relevant caselaw, the court has

determined that the predominate use test outlined in *In re Joseph* is the most reasonable and practical test for considering the applicability of the section 1325(a) hanging paragraph to a vehicle that is used for both personal and business uses. In reaching this decision, the court finds the following analysis of the various approaches by the court in *In re Ozenkoski* to be persuasive:

> The test used by the *Hill* Court effectively deems a personal use vehicle a business vehicle if there exists *any* business use at all. The *Hill* test is unreasonable because it allows a vehicle primarily used to satisfy personal needs to easily escape the restrictions of § 1325(a) simply because a debtor drives to work in it. In contrast, the *Solis* Court's "substantial and material test" assumes personal use unless the car is used almost *entirely* for business purposes. The *Solis* test is unreasonable because it ignores the fact that, in reality, most business vehicles will occasionally be used to satisfy personal needs. The test articulated in *Joseph* allows a reasonable amount of personal use which will naturally occur in the course of the ownership of a business vehicle. Thus, the *Joseph* test is the most reasonable test to use in the instant case.

*In re Ozenkoski*, 417 B.R. at 799.

For these reasons, the court adopts the *In re Joseph* test and will look to the predominate use of the vehicle to determine if it is a personal use or business use vehicle. In so doing, the court will examine the totality of circumstances while focusing on the factors outlined in *In re Joseph*.

Applying the test to the facts at hand, the court concludes that the debtor did not acquire the vehicle in question for personal use. There is little evidence in the record regarding the debtor's intent at the time she acquired the vehicle. The creditor relies on the provision in the retail installment contract titled "Primary Use for Which Purchased," in which the printed answer given is "personal, family, or household unless otherwise indicated." [Claim No. 1, at 6]. However, the court finds this provision to be ambiguous and inconclusive in this case. Immediately underneath that provision in the contract there are three boxes to check as other uses—one box beside the word "business," a second box beside the word "agriculture," and a

9

third box with a blank line. [*Id.*]. The line beside the third box has been filled in with "N/A," presumably an abbreviation for "not applicable" made by the dealer. The parties stipulated that the debtor was never asked by anyone at the dealership about her intended use of the vehicle. These facts fall short of conclusively establishing the debtor's intended use at the time of purchase.

In the absence of compelling evidence of the debtor's intended use at the time she acquired the vehicle, the court will also consider the debtor's actual use of the vehicle as persuasive evidence of her intent at the time of acquisition. *See In re Joseph*, 2007 WL 950267, at *3. The debtor testified that she is required to have a vehicle during the course of her employment to pick up patients and transport them to various events and medical appointments. She testified that this portion of her job consumes three and a half to six hours per day. She testified that it is a condition of her employment that she has a vehicle available to transport patients during her entire workday. Her employer reimburses her for mileage.

Based on these facts, the court finds that the vehicle was predominantly used to perform the functions of the debtor's job. Although the debtor also used the vehicle for personal uses, under the test articulated in *In re Joseph*, the court finds that the debtor's business use of the vehicle predominated over her personal use. Accordingly, the court concludes that the debtor did not acquire the vehicle for her personal use, the hanging paragraph in section 1325(a) does not apply, and section 506 may be used to determine the amount of the secured claim. The court overrules Nissan's objection to confirmation of the debtor's chapter 13 plan. There being no other objections, the court will enter a separate order confirming the debtor's chapter 13 plan.

It is so ORDERED.

# # #